<u>**PUBLISH**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 13-cv-01658-REB

MELISSA A. ZAGORIANAKOS,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

**ORDER AFFIRMING COMMISSIONER**

---

**Blackburn, J.**

      The matter before me is plaintiff's **Complaint** [#1],[1] filed June 25, 2013, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.*  I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The matter has been fully briefed, obviating the need for oral argument.  I affirm.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiff alleges that she is disabled as a result of chronic kidney disease, interstitial cystitis, degenerative disc disease of the lumbar spine, and fibromyalgia. After her applications for disability insurance benefits and supplemental security income

---

      [1]  "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on July 28, 2011.  At the time of the hearing, plaintiff was 38 years old.  She has high school education and past relevant work experience as a waitress, food service manager, and general clerk.  She has not engaged in substantial gainful activity since November 7, 2008, her amended alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  Other alleged impairments were determined to be non-severe.  The ALJ found that plaintiff had the residual functional capacity to perform light work that allowed her to sit, stand, and walk as needed and that included certain postural and environmental restrictions.  Based on these findings, the ALJ concluded that plaintiff was capable of performing her past relevant work as a general clerk.  Alternatively, the ALJ determined that there were other jobs existing in significant numbers in the national and local economies that she could perform.  He therefore found plaintiff not disabled at both step 4 and step 5 of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42

2

U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.     The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.     The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.     The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.     If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.     If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[2]  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

[2]  Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, parallel regulations relating to supplemental security income benefits can be found at Part 416 of that same title.

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff alleges error at each of steps 2 through 5 of the sequential evaluation. Finding no reversible error at any step of the ALJ's analysis, I affirm.

Plaintiff claims first that the ALJ erred in finding, at step 2 of the sequential evaluation, that her alleged "blackouts" and depression were not severe impairments. *See* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The ALJ found that neither of these conditions constituted a medically determinable impairment. (Tr. 36.) I find no error, much less reversible error, in these determinations.

Under the Commissioner's regulations, a finding of disability presupposes, *inter alia*, the existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1527(a)(1) (disability is the inability "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). A medically determinable impairment is a "anatomical, physiological, or psychological abnormalit[y] which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. The existence of a medically determinable impairment must be established by "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the

claimant's] statement of symptoms."[3]  *Id.*

Here, as noted by the ALJ, no clear etiology has been established for plaintiff's alleged synocopal or near-synocopal episodes.  (Tr. 36.)  Instead, the evidence of this alleged impairment is based solely on plaintiff's own reports of her symptoms to medical sources, which is clearly insufficient to establish the existence of a medically determinable impairment.  20 C.F.R. § 404.1528(b).  As for plaintiff's alleged depression, the ALJ noted that plaintiff had never received any form of counseling or other psychological or psychiatric treatment for this alleged condition.  (Tr. 36.)  The only reference to this condition in the record were two brief notations by a nurse practitioner.  (*See* Tr. 458, 615.)   However, the existence of a medically determinable impairment must be established by evidence from an acceptable medical source, which does not include a nurse practitioner.  *See* 20 C.F.R. § 404.1513(a).  There was thus no

---

[3] These terms are further defined in the regulations:

(a) Symptoms are your own description of your physical or mental impairment.  Your statements alone are not enough to establish that there is a physical or mental impairment.

(b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception.  They must also be shown by observable facts that can be medically described and evaluated.

(c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques.  Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. § 404.1528.

error in the ALJ's determination that these alleged impairments were not severe –

indeed, they did not even rise to the level of medically determinable impairments as to

which a determination of severity was required.  *See Hinkle v. Apfel*, 132 F.3d 1349,

1352 (10th Cir. 1997) (although threshold of severity is *de minimis*, mere existence of a

medically determinable impairment alone is insufficient to meet it).

Plaintiff next claims that the ALJ erred in assessing whether her degenerative

disc disease met or equaled the Listings.[4]  Spinal disorders are presumptively disabling

when the following criteria, *inter alia*, are met:

> Disorders of the spine (e.g., herniated nucleus pulposus,
> spinal arachnoiditis, spinal stenosis, osteoarthritis,
> degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda
> equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion of
> the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.[5]  Although plaintiff points to evidence of

nerve root compression (*see* Tr. 564, 604), there is no evidence from which it can be

definitively determined that *all* the additional criteria of the listing are met.[6]  *See*

---

[4]  The Commissioner's Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (effective Aug. 2, 2010), sets forth medical criteria pursuant to which impairments of various bodily systems will be considered presumptively disabling.  20 C.F.R. § 404.1520(d).  *See Sullivan v. Zebley*, 493 U.S. 521, 532, 534-35, 110 S.Ct. 885, 893, 107 L.Ed.2d 967 (1990).  Section 1.00 addresses disorders of the musculoskeletal system, and section 1.04 thereunder deals specifically with disorders of the spine.

[5]  Plaintiff does not challenge the ALJ's finding that she did not meet the requirements of sections 1.04B and 1.04C.

[6]  Plaintiff's citation to evidence of a positive straight leg raising test (*see* Tr. 586) addresses only some of the requirements of the listing.

*Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (footnote omitted).  I thus find no reversible error in the ALJ's step 3 determination that plaintiff's physical impairments did not meet this listing.[7]

Plaintiff further contends that in determining her residual functional capacity, the ALJ improperly discredited the opinion of her treating source, Nurse Practitioner Shirley Sawyer.  In September, 2010, Ms. Sawyer completed a "Fibromyalgia Residual Functional Capacity Questionnaire" on plaintiff's behalf.  Therein, she opined that plaintiff could sit for no more than 20 minutes at a time and stand for no more than 10 minutes at a time for no more than two hours a day total.  She represented that plaintiff required a job that allowed her to shift positions at will and permitted breaks every 1 to 2 hours for up to 30 minutes at a time.  She could lift no more than 10 pounds occasionally and was likely to be absent from work due to symptoms related to her impairments more than three times a month.  (Tr. 617-619.)  As confirmed by the vocational expert at the hearing, these limitations, if accepted, would preclude competitive employment.  (Tr. 71.)

In considering this opinion, the ALJ noted that Ms. Sawyer was not an acceptable medical source pursuant to the Commissioner's regulations.  *See* **Social Security Ruling** 06-03p, 2006 WL 2329939 at *1 (SSA Aug. 9, 2006).  As such, she can neither issue medical opinions, *see* 20 C.F.R. § 404.1527(a)(2), nor be considered a treating source whose opinion must be evaluated to determine whether it is entitled to

---

[7]   The ALJ also considered whether plaintiff's other medically determinable impairments met the requirements of the listings.  (Tr. 36-37.)  Plaintiff alleges no error with respect to any of these determinations.

controlling (i.e., determinative) weight, *see* 20 C.F.R. § 404.1513(d). **See also Social Security Ruling 06-03p**, 2006 WL 2329939 at *2; *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). Nevertheless, the Commissioner has recognized that given the realities of modern-day managed healthcare,

> medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

**Social Security Ruling** 06-03p, 2006 WL 2329939 at *3 (SSA Aug. 9, 2006) [hereinafter "**SSR** 06-03p"]. Accordingly, such opinions still must be considered, applying the same factors as are generally used to assess treating source opinions. *Id.* at *4. **See also** 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6); *Frantz*, 509 F.3d at 1302.[8]

The ALJ fully complied with this obligation here. Contrary to plaintiff's argument, the ALJ did not discredit Ms. Sawyer's opinion merely because it was based on plaintiff's subjective reports, which he found not credible. **See Nieto v. Heckler**, 750

---

[8] These factors include:

1.  the physician's length of treatment of the claimant;
2.  the physician's frequency of examination;
3.  the nature and extent of the treatment relationship;
4.  the support of the physician's opinion afforded by the medical evidence of record;
5.  the consistency of the opinion with the record as a whole; and
6.  the specialization of the treating physician.

20 C.F.R. § 416.1527(c)(2)-(6). **See also** SSR 06-03p, 2006 WL 2329939 at *4-5.

F.2d 59, 60-61 (10th Cir. 1984).[9]  The ALJ also noted that Ms. Sawyer failed to

substantiate the restrictions she imposed, noting, for example, that there was no record

evidence supporting a conclusion that plaintiff had restrictions in the use of her hands or

significant limitations on her ability to sit, as Ms. Sawyer suggested.  (Tr. 42.)  A lack of

adequate explanation and consistency with other evidence of record are both

appropriate considerations in weighing a source opinion.  *See* 20 C.F.R. §§

404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more

weight we will give that opinion.") & 404.1527(c)(4) ("Generally, the more consistent an

opinion is with the record as a whole, the more weight we will give to that opinion.").

Moreover, the ALJ's conclusions are supported by the evidence, more fully explicated

elsewhere in his opinion.  I therefore find no reversible error in this regard.

Nor did the ALJ err in determining plaintiff's residual functional capacity by

discrediting her subjective descriptions of her pain and limitation.[10]  Plaintiff argues that

the ALJ misapplied the analysis required by *Luna v. Bowen*, in which the Tenth Circuit

outlined a tripartite test for evaluating subjective complaints of pain:

_____

[9] Although the ALJ did mention this consideration, any error in this regard was undoubtedly harmless, as his assessment of the weight to be given Ms. Sawyer's opinion is otherwise adequately explained and fully supported by the record.  *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995); *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988).

[10] Plaintiff also suggests that the residual functional capacity assessment is infirm because it is not supported by a medical opinion.  Aside from the fact that the ALJ's determination of plaintiff's residual functional capacity is fully supported by the opinion of the consultative examiner, on which the ALJ specifically relied (*see* Tr. 42), "the ALJ was not required to adopt or rely on any medical source opinion in making her residual functional capacity assessment because the determination of residual functional capacity is not a medical opinion." *Moses v. Astrue*, 2012 WL 1326672 at *4 (D. Colo April 17, 2012).  Instead, residual functional capacity is assessed "based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), "including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations," *Noble v. Callahan*, 978 F.Supp. 980, 987 (D. Kan. 1997).  Although the ALJ's determination must be grounded in some medical evidence, *see Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995), it ultimately is an administrative determination reserved for the Commissioner, 20 C.F.R. §§ 404.1546 & 416.946; *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000).

> We must consider (1) whether Claimant established a pain-
> producing impairment by objective medical evidence; (2) if
> so, whether there is a "loose nexus" between the proven
> impairment and the Claimant's subjective allegations of pain;
> and (3) if so, whether, considering all the evidence, both
> objective and subjective, Claimant's pain is in fact disabling.

*Musgrave*, 966 F.2d at 1375-76 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir.

1987)).  In this regard, plaintiff claims the ALJ improperly discredited her subjective

complaints on the ground that they were not substantiated by the evidence of record.

(*See* Tr. 38-39.)

Contrary to the implicit assumption of plaintiff's argument, *Luna* does not

preclude the ALJ from considering the lack of objective medical findings in assessing

credibility.  Instead, *Luna* stands for the more limited proposition that "a lack of objective

corroboration of the pain's severity cannot justify *disregarding* those allegations." *Luna*,

834 F.2d at 165 (emphasis added).  Nevertheless, the *Luna* court expressly recognized

that "the absence of an objective medical basis for the degree of severity of pain may

affect the weight to be given to the claimant's subjective allegations of pain." *Id.*  The

ALJ therefore was not prohibited from considering the degree to which the evidence,

including the objective medical evidence, substantiated plaintiff's subjective reports of

pain and functional limitation.

Moreover, in general, "credibility determinations 'are peculiarly the province of

the finder of fact,' and should not be upset if supported by substantial evidence." *White

v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387,

390-91 (10th Cir. 1995)).  The ALJ here gave clear, specific, legitimate reasons linked to

specific evidence in the record for his credibility assessment.  These included the

relatively mild findings of any underlying physical explanation for plaintiff's severe pain

complaints, the lack of supportive examination findings, plaintiff's treatment history, and plaintiff's inconsistent reports to her treating sources and inconsistent testimony at the hearing.  (Tr. 38-40.)  His findings in this regard find support in the record, and his determination therefore entitled to substantial deference.  *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Although plaintiff points to other evidence which purportedly contradicts the ALJ's assessment, I am not empowered to reweigh the evidence in the manner she requests.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  *See also Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988) (conflicts in the evidence are for the ALJ to resolve).  Accordingly, I find no reversible error on this basis.

Finally, plaintiff maintains that the ALJ's determinations that she could return to her past relevant work or alternatively could perform other work was based on a imprecise hypothetical to the vocational expert.  In this regard, he notes that the opinion of the consultative examiner, to which the ALJ afforded "significant weight," provides that plaintiff "would need frequent breaks to use the bathroom."  (Tr. 42, 504.)  In his hypothetical to the vocational expert and his ultimate residual functional capacity assessment, the ALJ provided instead that plaintiff would "require[] ready access to bathroom facilities."  (Tr. 37, 69.)

Although plaintiff purports to perceive a difference between these two standards, the court does not, or at least, not one consequential enough to warrant remand.  *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal.");  *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial

evidence).  The vocational expert was present for the hearing, and thus undoubtedly was aware of plaintiff's allegations that she needed to use the bathroom frequently. (*See* Tr. 54, 61.)  The court cannot find that the vocational expert did not understand the ALJ's limitation of "ready access to a bathroom" to encompass the frequency of bathroom visits set forth in plaintiff's testimony.

Nevertheless, to the extent there was ambiguity in this respect, the court notes that plaintiff was represented by an attorney at the hearing, who himself presented a hypothetical to the vocational expert which did not incorporate *any* limitation attributable to bathroom breaks.  (Tr. 71.)  Although administrative hearings before the ALJ are non-adversarial in nature, *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), "when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (citation and internal quotation marks omitted).  Plaintiff's counsel's failure to further refine this issue at the hearing indicates further that he did not perceive an ambiguity in this regard, and counsels against remand.  *See Glass v. Shalala*, 43 F.3d 1392, 1394–96 (10th Cir. 1994).

## IV.  ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated February 25, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge